UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID LEADERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:02-CV-105 |
| | ) | (Shirley) |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION d/b/a | ) | |
| PHILIPS CONSUMER ELECTRONICS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In this employment discrimination case, the parties have submitted competing motions for summary judgment. For the reasons set forth below, both Defendant's Motion for Summary Judgment [Doc. 23] and Plaintiff's Motion for Summary Judgment [Doc. 28] are **DENIED**.

**I.     Factual Background**

The plaintiff David Leaders ("Leaders") brought this civil action against Defendant Philips Electronics North America Corporation d/b/a Philips Consumer Electronics Company ("Philips") on March 1, 2002, alleging that he was wrongfully terminated in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA") and that Philips failed to re-hire him in retaliation for his complaints against the unlawful discrimination. [Doc. 1].

Leaders' date of birth is January 31, 1952. At the time of his termination in June, 2000, Leaders was employed at the Philips facility in Knoxville, Tennessee, as a Senior Principal Engineer in the Electrical Skill Group. This group provided electrical design for projection and high definition televisions. Leaders had been employed in this capacity since August 1991.

The following are the facts as asserted by the Defendant. Philips discharged Leaders and 35 other employees in June, 2000 as part of an economically mandated reduction initiative ("Workforce Reduction"). Marc Herregods, Sr., Director PTC Development, and Carol Thompson implemented the Workforce Reduction in an effort to save the development group from being discontinued and the Knoxville facility from being closed. Specifically, Philips' Board of Management in Amsterdam had determined that the Knoxville facility would be closed, but in light of certain budgetary reductions proposed by Herregods and Thompson, the Board agreed to leave the Knoxville facility open subject to the proposed restructuring. Herregods decided ultimately who would be terminated as part of the proposed reduction. Mr. Enrique Herrera, a Human Resources Manager, and Earl Erickson, the Electrical Skill Group Manager and Leaders' superior, also participated in the termination process.

After Leaders was terminated, it appears that his duties were assumed by Rusty Jennings, another member of the Electrical Skill Group, and Darrell Chappell, a Philips employee who returned to Knoxville in July, 2000 from an expatriate assignment in Eindhoven. A few months after Leaders' termination, Erickson contacted Leaders about a temporary consulting position in power supply. According to Philips, when Erickson asked Leaders if he was interested in the aforementioned contract position, Leaders advised that he had another job in Pennsylvania. Thereafter, Chappell moved to a different project at the Knoxville facility, and Jennings moved to

2

a leadership position as an electrical lead. Erickson thus put in a requisition for a full-time power supply designer. He did not contact Leaders about the job, however, because he assumed that the people laid off in 2000 already would have located other employment by that time, an assumption which was allegedly proven true when Leaders was contacted about the contract job.

## II. The Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

## III. Analysis

Philips argues that it is entitled to summary judgment because Leaders cannot offer any competent proof capable of proving age discrimination and/or retaliation either through direct evidence or through the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). [Doc. 23].

3

Case 3:02-cv-00105  Document 89  Filed 06/06/05  Page 3 of 7  PageID #: 32

Leaders did not respond directly to Philips' Motion for Summary Judgment, but instead filed his own Motion for Summary Judgment, arguing that the Court should deny Philips' motion and rule in his favor on his age discrimination and retaliation claims "on the grounds that there is a genuine issue of material fact."[1]  [Doc. 28].  Philips has responded to Leaders' motion, arguing that he has not set forth facts which entitle him to a judgment as a matter of law. [Doc. 56].

A plaintiff who claims age discrimination may prove his case in one of two ways. First, the plaintiff may produce "direct evidence" of discrimination, that is, "evidence that proves the existence of a fact without requiring any inferences."  Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 548 (6th Cir. 2004).  Thus, in an age discrimination case such as this one where the plaintiff was terminated as a result of a reduction in force, the plaintiff may prove his case by showing "facts which would tie the decision to select [the plaintiff] for termination because of [his] age."  Id.

The second way an age discrimination plaintiff may prove his case is by utilizing the McDonnell Douglas burden shifting analysis.  Id. at 547.  Under this analysis, a plaintiff must first establish a prima facie case of age discrimination, which consists of the following elements: (1) that he was a member of a protected age class; (2) that he was discharged; (3) that he was qualified for the position he held; and in a reduction in force case such as this, (4) that there is "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998).  Once the plaintiff has made out a prima facie case, the burden shifts to the

---

[1]While such a contention is an appropriate response to Defendant's Motion for Summary Judgment, this contention is not an appropriate basis on which to seek summary judgment and in fact would be a sufficient reason standing alone to deny Plaintiff's Motion Summary Judgment.

4

defendant to give a legitimate, non-discriminatory reason for the termination. Rowan, 360 F.3d at 547. If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the legitimate reasons offered were merely pretext for a decision "actually motivated by an unlawful bias against age." Id.

The Court finds that Leaders has presented evidence, which if taken as true (and which the Court must accept as true in considering Defendant's motion), constitutes direct evidence of age discrimination. Specifically, Leaders testified that on the day he was terminated, Erickson, the Electrical Skill Group Manager and a participant in Leaders' termination, told Leaders that he was selected for discharge because of his age. Specifically, Leaders testified as follows:

> A. Okay. Well, I had heard that the management wanted to model the Singapore division, where the age is – I don't know – probably twenty-two, make that a model for all of their plants around the world and that Knoxville was the one that was farthest out away from that model. Therefore, they stuck way out there, and they needed to be pushed back here so their average age would be in the thirties somewhere.
>
> Q. Who told you that?
>
> A. Earl [Erickson] told me that. He even drew a chart on the board. "Here's a normal distribution curve of Knoxville. Here's a normal distribution of the age of Singapore. And we're way out here on the end, and Marc Hergods [sic] is unhappy with this, because it's an edict out of Holland that all the divisions will fall more in line with this other age curve.

[Deposition of David Leaders at 175, lines 5-20].

Even if such evidence did not constitute direct evidence of discrimination, the Court finds that based upon the evidence presented, Leaders has made out a prima facie case of discrimination so as to preclude summary judgment, and that genuine issues of material fact exist as to whether Philips' proffered reasons for terminating Leaders were merely pretext.

5

The Court further finds that genuine issues of material fact exist with respect to Leaders' claim of retaliation. To establish a prima facie case of retaliation, a plaintiff must show the following: "(1) that the plaintiff engaged in a protected activity; (2) that the defendant had knowledge of the plaintiff's protected conduct; (3) that the defendant took an adverse employment action towards the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." Weigel v. Baptist Hospital of East Tennessee, 302 F.3d 367, 381 (6th Cir. 2002). Leaders testified that following his termination, he saw an advertisement on the internet posted by an employment agency called Adecco that was "probably a perfect description" of his former job. Leaders forwarded his resume to Bill Dye at Adecco. Leaders states that Dye advised him that the job was with Philips and that Leaders was "just what they're looking for." However, Dye later called Leaders back and advised that Philips would not hire Leaders because there were "other activities in progress." Provided that Mr. Dye testifies to such at trial or that such evidence is otherwise presented in an admissible form at trial, this evidence creates genuine issues of material fact as to whether there was a causal connection between Leaders' filing of an EEOC charge following his termination and Philips' failure to rehire him for the advertised position.

6

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 23] is **DENIED**. As the Court has determined that genuine issues of material fact exist which must be resolved by a jury, Plaintiff's Motion for Summary Judgment [Doc. 28] is also **DENIED**.

**IT IS SO ORDERED.**

ENTER:

    s/ C. Clifford Shirley, Jr.    
United States Magistrate Judge